**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **SHEIBA TAFAZZOLI,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: PWG-19-321** |
| | | **(& PWG-19-1638)** |
| **NUCLEAR REGULATORY** | * | |
| **COMMISSION,** *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Sheiba Tafazzoli alleges employment discrimination and retaliation claims against her former employer, the Nuclear Regulatory Commission ("NRC" or the "Agency"), and its Chairman, Kristine L. Svinicki (collectively, "Defendants") in a consolidated complaint. First Am. Consol. Compl. ("Am. Compl."), ECF No. 11.[1] Ms. Tafazzoli's suit includes ten causes of action brought under both the substantive and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) *et seq.* ("Title VII"), and under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"). *Id.* Defendants have filed a Motion to Dismiss, or Alternatively, for Summary Judgment, ECF No. 26. I have reviewed all the voluminous filings[2] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, I shall grant in part and deny in part Defendants' motion, dismissing with

---

[1]    This complaint represents the first amendment and consolidation of two previously filed complaints: PWG-19-321 and PWG-19-1638.  All references to an ECF No. are in PWG-19-321 unless specifically stated otherwise.

[2]    Including Defendants' Motion (ECF No. 26) and its 60 exhibits, Plaintiff's Response (ECF No. 27) and its 60 exhibits (the exhibit list, ECF No. 28, listed 60 exhibits but not all were actually filed), and Defendants' Reply (ECF No. 31).

prejudice Counts I, II, IV, VI, VIII, IX, and X.  Counts III, V, and VII shall proceed to discovery.

Ms. Tafazzoli's constructive discharge claim is dismissed without prejudice for failure to exhaust

administrative remedies.

## BACKGROUND

### I.   Factual Background

The following facts are primarily allegations from Ms. Tafazzoli's complaint.[3]   At all times

relevant to this litigation, Ms. Tafazzoli, a non-white deaf female, was employed by the NRC[4] as

an engineer in the Rockville, Maryland office.  Am. Compl. ¶¶ 1-16.  She began working for the

NRC as a "general engineer" in July 2010 and was the only deaf female engineer at NRC, although

there were about six deaf employees in the entire Agency.  *Id.* at ¶¶ 48, 51-52.[5]  About the same

time that NRC hired Ms. Tafazzoli, it also hired a deaf male nuclear engineer and a deaf male

scientific or technical employee, both of whom reported to a different supervisor. *Id.* at ¶¶ 53-55.

Ms. Tafazzoli was supervised by Patricia Silva from around 2014 to 2017. *Id.* at ¶¶ 55, 61.

Employees with hearing disabilities may be assigned an interpreter as a reasonable

accommodation to assist them with communications needed to perform the functions of their jobs.

*Id.* at ¶¶ 57-58.  Ms. Tafazzoli alleges that the deaf male engineer and the deaf male technical

employee were provided interpreters with no prohibitions, but that she was either prohibited from

---

[3]    In this section I will detail the facts alleged by Ms. Taffazoli, because for purposes of considering a motion to dismiss, this Court takes the facts alleged in the complaint as true.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  As I explain below however, I am partially converting this motion into one for summary judgment.  As such, I will detail the opposing facts relied upon by each party when relevant.

[4]    The Nuclear Regulatory Commission is an independent federal agency responsible for administration of laws and regulations related to nuclear power, materials, and waste.  Am. Compl. ¶ 12.

[5]    Ms. Tafazzoli was hired as a Schedule A disability hire with a personnel grade when she entered the Agency of GG-7, and she left as a GG-13.  Defs.' Mot. Ex. 44 ¶ 56, ECF No. 26-46; Pl.'s Resp. Ex 17, ECF No. 27-15.

requesting an interpreter or her supervisors and Human Resources interfered with her ability to use interpreters. *Id.* at ¶ 56.

Prior to being assigned to work under Ms. Silva, Ms. Tafazzoli participated in an Equal Employment Opportunity Commission ("EEOC") hearing as a witness. *Id.* at ¶¶ 60, 65-66. She had also entered into a settlement agreement with the NRC in a separate EEOC matter in 2012, which resulted in her being moved into Ms. Silva's division, although she was initially supervised by Mark Lombard. *Id.* at ¶¶ 67-68. Ms. Tafazzoli alleges that Mr. Lombard "rarely" approved her for "qualifications meetings" and never assigned her a "qualifications journal."[6] *Id.* at ¶ 68. She further alleges that once Ms. Silva became her supervisor, Ms. Silva refused to allow her to complete her qualifications by refusing to assign a mentor. *Id.* at ¶¶ 69-70.[7] Similarly, Ms. Tafazzoli alleges that she was assigned menial technical duties and not assigned essential engineer duties although the essential duties were assigned to her non-deaf coworkers. *Id.* at ¶¶ 72-73, 75-76.[8] Ms. Tafazzoli believes that Ms. Silva retaliated against her because she had issues with Ms. Tafazzoli's disability, reliance on reasonable accommodations, and prior participation in an EEOC case. *Id.* at ¶¶ 71, 74-75.

---

[6]     In the division in which she worked, Ms. Tafazzoli alleges that non-deaf engineers obtain qualifications through attending meetings, assigned mentors and docents and being assigned a qualifications journal, generally, within two years of hire. Am. Compl. ¶ 70. Ms. Tafazzoli added in her response to Defendants' motion that Ms. Silva also refused to review or sign her Individual Development Plan ("IDP"), which is "an employee's guide to individual career development planning and a voluntary initiative for employees that supervisors are encouraged to endorse." Pl.'s Resp. 9. However, Ms. Tafazzoli also responds that the IDP was optional and that she should not have been reprimanded by Ms. Silva in June 2016 for not providing one, indicating that it was a pretextual request. *Id.* at 13-14.

[7]     According to the Agency, Ms. Silva has never assigned any employee a mentor. Mot. Mem. 7.

[8]     The Agency asserts that Ms. Tafazzoli was assigned tasks consistent with her position. Mot. Mem. 5-6 (citing examples).

Ms. Tafazzoli also alleges that Ms. Silva gave her negative performance evaluations, although she had received excellent appraisals before 2016, and excluded her from meetings by intentionally not inviting interpreters knowing that Ms. Tafazzoli could not effectively participate without an interpreter. *Id.* at ¶¶ 82-87, 92-93. And, Ms. Silva took away Ms. Tafazzoli's pre-approved accommodations such as Communication Access Realtime Translation (CART), split-work schedule, and teleworking, as well as denied reasonable requests for a personal qualified interpreter, note-takers, and a functional video-phone. *Id.* at ¶¶ 88-90; 121-124.[9] Ms. Tafazzoli alleges that she was denied leave and training opportunities. *Id.* at ¶¶ 96-101. She adds that Ms. Silva repeatedly threatened disciplinary action and followed through on her unjustified discriminatory threats, such as issuing a 14-day suspension. *Id.* at ¶¶ 102-106.

In December 2016, Ms. Silva's supervisor, Mr. Lombard, proposed to suspend Ms. Tafazzoli for 14 days at Ms. Silva's request as a result of questionably reported credit hours, which Ms. Tafazzoli alleges were approved by a temporary supervisor. Pl.'s Resp. 17-19. The decision to suspend Ms. Tafazzoli became final on July 7, 2017. *Id.* at 19; Defs.' Mot. Ex. 25, ECF No. 26-27. On July 13, 2017, the Agency issued Ms. Tafazzoli a Cease and Desist Order regarding

---

[9]     The Agency asserts that Ms. Tafazzoli was provided with a multiple accommodations in response to her requests, including: "a videophone; a visual and portable fire alarm; IP-relay service which allows hearing impaired individuals to place telephone calls to standard phone users using a keyboard or other assistive device; an Interpretype3; a Blackberry; coordination with her seating arrangements and office configuration to fit her needs for light and movement; two chairs in addition to her desk chair; 'eye breaks' during the work day as needed to rest her eyes; sign language interpreters as needed, including during training meetings and administrative meetings, and priority seating for Tafazzoli and her assigned interpreter and advance copies of meeting materials and presentations when possible; computer assisted real-time transcription service ('CART') during technical training meetings." Mot. Mem. 7-8 (citing Ex. 17, ECF No. 26-19). Ms. Tafazzoli complains that although some accommodations were made, they were often unreliable, failed to operate properly, or were later taken away. Pl.'s Resp. 11, 12-13.

her alleged mistreatment of interpreters.  Pl.'s Resp. 19-20.  Ms. Tafazzoli denies ever mistreating or harassing interpreters. *Id.* at 20; Am. Compl. ¶¶ 127-129.

When Ms. Tafazzoli requested reasonable accommodations, she ran into roadblocks from Ms. Silva, Human Resources employees, and their colleagues.  Am. Compl. ¶¶ 107-115; 119-127. In September 2016, Ms. Tafazzoli was temporarily assigned to a different position, but was reassigned back under Ms. Silva in 2017.  *Id.* at ¶ 117.[10]  Ms. Tafazzoli alleges that although her temporary supervisor attempted to help with her reasonable accommodation requests, he ultimately denied her requests under direction of the Agency Attorney and his supervisor.  Pl.'s Resp. 15-16.  In August 2017, Ms. Tafazzoli was reassigned to report to the director of the division as a result of Ms. Taffazoli's filing of a sexual harassment complaint against Ms. Silva.  Pl.'s Resp. 35; *see also* Defs.' Mot. Ex. 41 at 7-8, ECF No. 26-43.

Ms. Tafazzoli alleges that the Agency conspired to remove her, and made her position so unbearable that she was forced to resign.  Am. Compl. ¶¶ 127-148.  In particular, Ms. Tafazzoli describes events related to a non-operational camera that a coworker placed in her cubical as a joke, which resulted in a visit from two NRC security officers and led to her being placed on immediate administrative leave.  *Id.* at ¶ 135; Pl.'s Resp. 20-23. One of the security officers reported that they were investigating a potential security violation, Ms. Tafazzoli became upset,

---

[10]     The parties appear to dispute whether Ms. Silva supervised Ms. Tafazzoli in 2017, which Ms. Tafazzoli asserts is a critical time during which Ms. Silva and the Agency took several of the materially-adverse actions against her.  Pl.'s Resp. 7; Mot. Mem. 6.  According to Ms. Silva's statement in the first EEOC complaint (NRC-16-26), Ms. Tafazzoli was under her supervision from October 2014 to January 2015, and mid-April 2015 until early September 2016, and not thereafter.  Defs.' Mot. Ex. 4 at ¶¶ 4-6, ECF No. 26-6.  However, the Agency also states that on August 14, 2017, Ms. Tafazzoli resumed working under Ms. Silva.  Mot. Mem. 20-21 (citing Ex. 42, ECF No. 26-44).  In Ms. Silva's affidavit in NRC-18-05, she stated that Ms. Tafazzoli reported to her from August 14 to 28, 2017, but on August 28, 2017, the director, Mike Layton, became Ms. Tafazzoli's supervisor until her resignation. Mot. Ex. 41 at 3, ECF No. 26-43.

and she  pushed him into the wall.  Defs.' Mot. Ex. 46, ECF No. 26-48.  A Notice of Proposed

Removal was issued on October 2, 2017 from Michael Layton, Director of Ms. Tafazzoli's

division.  Defs.' Mot. Ex. 49, ECF No. 26-51.  It proposed her removal no earlier than 30 days

from receipt (allowing for a response) and provided supporting details of her misconduct for the

following charges: (1) failure to cooperate in an agency investigation; (2) inaccurate time and

attendance reporting; (3) absent without leave (AWOL); (4) lack of candor; and (5) inappropriate

physical contact with employee.  *Id.*

Ms. Tafazzoli resigned effective October 17, 2017.  Am. Compl. ¶¶ 136, 141; Defs.' Mot.

Ex. 50, ECF No. 26-52.

## II.      Procedural Background

Ms. Tafazzoli filed a series of discrimination and retaliation complaints with the Agency's

Equal Employment Opportunity ("EEO") office in 2016 and 2017.  Pl.'s Resp. 2.  Relevant to this

litigation, she filed a formal discrimination complaint, pursuant to 29 CFR § 1614.106, with the

Agency on December 30, 2016.[11]  Defs.' Mot. Ex. 1, ECF No. 26-3, Pl.'s Resp. Ex. 42, ECF No.

28-3.  In her complaint (NRC-16-26), she alleged denial of reasonable accommodations, disparate

treatment, hostile work environment, and retaliation.  Defs.' Mot. Ex. 1.  On March 16, 2017, the

claims were accepted, in part, for investigation.  Defs.' Mot. Ex. 2, ECF No. 26-4.

After resigning from the Agency, Ms. Tafazzoli attempted to amend her complaint in

December 2017, adding a claim for constructive discharge.  Defs.' Mot. Ex. 35, ECF No. 26-37;

Defs.' Mot. Ex. 36, ECF No. 26-38.  On December 18, 2017, the Agency responded to Ms.

Tafazzoli's email requests for amendments to NRC-16-26, denied the request to amend, but

---

[11]      The complaint was dated December 28, 2016 but was sent by facsimile and received on
December 30, 2016.  Defs.' Mot. Ex. 1, ECF No. 26-3; Pl.'s Resp. Ex 42, ECF No. 28-3.

created a new complaint, NRC-18-05.  Defs.' Mot. Exs. 35-36.  On January 25, 2018, the Agency

sent a revised acceptance of the new complaint (NRC-18-05) acknowledging that Ms. Tafazzoli

had elected to create a mixed case complaint,[12] alleging constructive discharge as claim 2, which

was treated as having been filed on January 5, 2018.[13]  Defs.' Mot. Ex. 36.  The Agency issued a

Final Agency Decision on claim 2 (the constructive discharge claim) on August 10, 2018, finding

that Ms. Tafazzoli had not been constructively discharged.  Pl.'s Resp. Ex. 2 at 43, ECF No. 27-2.

The decision was sent to Ms. Tafazzoli by certified mail, which was delivered on August 17, 2018.

*Id.* at 34.[14]  The Agency also sent a copy of the decision to Ms. Tafazzoli by Federal Express,

which was delivered on August 14, 2018.  Defs.' Mot. Ex. 54 at 3; Pl.'s Resp. Ex. 6.  Ms. Tafazzoli

appealed the decision to the Merit Systems Protection Board ("MSPB") on September 24, 2018.

Defs.' Mot. Ex. 54, ECF No. 26-56; Pl.'s Resp. Ex. 6, ECF No. 27-6.  The MSPB issued a decision

on November 30, 2018, finding that the appeal was untimely.  *Id.*[15]  Ms. Tafazzoli continues to

assert that her appeal was timely.  Pl.'s Resp. 3.  On January 30, 2019, Ms. Tafazzoli formally

---

[12]     When an employee complains of an adverse employment action serious enough to appeal to the Merit Systems Protection Board ("MSPB"), such as removal from employment, and also alleges that the action is based on discrimination under an antidiscrimination statute such as Title VII, the case is referred to as a "mixed case."  5 C.F.R. § 1201.3; 29 C.F.R. § 1614.302(a); 5 U.S.C § 7702(a)(1)(B).  "An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 CFR 1201.151, but not both."  29 C.F.R. § 1614.302 (b).  *See also Niskey v. Kelly*, 859 F.3d 1, 6-7 (D.C. Cir. 2017) (citing 5 U.S.C. § 7702-7703; *Kloeckner v. Solis*, 568 U.S. 41 (2012)).

[13]     Ms. Tafazzoli had argued that her email of November 22, 2017 should be considered her date of election of a mixed case complaint as it pertained to her constructive discharge claim. Defs.' Mot. Ex. 36 at 1-2.  However, receipt was confirmed on December 5, 2017 for Claim 1 and January 5, 2018 for Claim 2. *Id.* at 2.

[14]     Ms. Tafazzoli disputes this delivery, stating that she was travelling and did not receive the decision until August 25, 2018.  Am. Compl. ¶¶ 38-42.

[15]     Plaintiff refers to this decision as the "Initial Decision of the Merit Systems Protection Board," and Defendants refer to it as the "Final Agency Decision."  *See* ECF No. 28, Mot. Mem. 26.  The decision states that it is the initial decision on appeal and "will become final on January 4, 2019 unless a petition for review is filed by that date."  Defs.' Mot. Ex. 54; Pl.'s Resp. Ex. 6.

withdrew her requests for hearings in NRC-16-26 and 18-05 in favor of filing suit in district court. Defs.' Mot. Ex. 60, ECF No. 26-62.  The hearing requests were dismissed without prejudice by the EEOC on January 31, 2019.  *Id.*

On February 3, 2019, Ms. Tafazzoli filed a ten-count complaint with this Court alleging employment discrimination and retaliation beginning in 2014 and resulting in constructive discharge.  Compl., ECF No. 1.  She claimed that she had exhausted her administrative remedies based on the Agency's August 2018 decision denying her mixed complaint claim, which she asserted was timely appealed on September 24, 2018 but dismissed as untimely by the MSPB, and which became final on January 4, 2019.  *Id.* at ¶¶ 21-31.

On February 15, 2019, the Agency's EEO Office emailed Ms. Tafazzoli's counsel to inquire whether Ms. Tafazzoli wanted the NRC to dismiss both complaints so that she could proceed with a civil action in district court.  Pl.'s Resp. Ex. 1 at 1.  Not having received a timely response, the NRC issued a decision withdrawing NRC-16-26 and 18-05 on March 5, 2019.  *Id.* at 2.  Ms. Tafazzoli's counsel then responded and requested a Final Agency Decision on the remaining claims in NRC-16-26 and 18-05.  *Id.*  The Agency's EEO office responded by email on March 12, 2019 informing Ms. Tafazzoli's counsel to disregard the withdrawal decision and indicating that the NRC would issue a Final Agency Decision on the remaining claims in the two cases. *Id.*  It then learned on March 29, 2019 that a civil action had already been filed on February 4, 2019 (PWG-19-321).  *Id.*  The EEO Office reviewed PWG-19-321 and determined that the procedural history provided in it was that of the mixed case complaint (Claim 2 of NRC-18-05), but that the theories of discrimination and the bases raised were identical to those raised in both EEO complaints. *Id.* (providing detailed comparisons of allegations).  Finding that the issues raised

in the EEO complaints and the civil action were the same, the Agency issued a dismissal of complaints NRC-16-26 and 18-05 Claim 1 on April 23, 2019.  *Id.* at 1-3, n.1.

On June 3, 2019, Ms. Tafazzoli filed a ten-count complaint with this Court alleging employment discrimination and retaliation beginning in 2014 and resulting in constructive discharge.  Compl., ECF No. 1 in PWG-19-1638.  Ms. Tafazzoli claimed that she had exhausted her administrative remedies based on the Agency's final decision in NRC-16-26 and 18-05 on or about April 29, 2019, which was not appealed.  *Id.* at ¶¶ 21-32.  The case was consolidated with the earlier-filed case, PWG-19-321, on July 3, 2019, and Ms. Tafazzoli filed an amended consolidated complaint on August 30, 2019.  *See* ECF Nos. 9, 11.  She alleges the following ten causes of action:

- Count I – Disparate Treatment Gender Discrimination in Violation of Title VII, 42 U.S.C. § 2000(e) *et seq.*

- Count II – Disparate Treatment Gender Discrimination (Hostile Work Environment) in Violation of Title VII, 42 U.S.C. § 2000(e) *et seq.*

- Count III – Retaliation in Violation of Title VII, 42 U.S.C. § 2000(e) *et seq.*

- Count IV – Retaliatory Hostile Work Environment in Violation of Title VII, U.S.C. § 2000(e) *et seq.*

- Count V – Failure to Accommodate in Violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

- Count VI – Discrimination (Disability) in Violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

- Count VII – Retaliation in Violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

- Count VIII – Disparate Treatment Color Discrimination in Violation of Title VII, 42 U.S.C. § 2000 (e) *et seq.*

- Count IX – Disparate Treatment Color Discrimination (Hostile Work Environment) in Violation of Title VII, 42 U.S.C. § 2000(e) *et seq.*

- Count X – Disparate Treatment Disability Discrimination (Hostile Work Environment) in Violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

Am. Compl., ECF No. 11.

Defendants filed the pending motion on March 2, 2020 seeking dismissal for failure to state a claim, or alternately, for summary judgment on all counts of the complaint. Defs.' Mot. 1.

## STANDARD OF REVIEW

### I.     Dismissal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## II.     Rule 12(d) Conversion

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB–12–1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). However, if the Court considers matters outside the pleadings, the Court must treat the motion as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, 916 F. Supp. 2d 620, 622-23 (D. Md. 2013).

Under Fourth Circuit law, proper conversion under Rule 12(d) requires two things: (1) that all parties "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment;" and (2) that all parties "be afforded a reasonable opportunity for discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue*, DKC–10–3280, 2012 WL 707008, at *7 (D. Md. Mar.2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay*, 761 F.2d at 177). Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Here, the title of the motion itself, "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," makes it obvious that the Court might

construe it as seeking summary judgment, and thereby provides sufficient notice to Plaintiff. *See Ridgell*, 2012 WL 707008, at *7; *see Laughlin*, 149 F.2d at 260-61.

Generally, however, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 639-40 (4th Cir. 2016) (per curiam); *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). Certainly, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To that end, Federal Rule of Civil Procedure 56(d) unambiguously provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Here, Ms. Tafazzoli filed an affidavit and identified the material she needed to discover to fully respond to a summary judgment motion. Pl.'s Resp. Ex. 12, ECF No. 28-21. Although there is a significant amount of material available from the administrative proceedings, and both parties have attached legion exhibits to their briefs,[16] there has been no opportunity for discovery in this

---

[16]    Defendants included 60 exhibits with their motion, some of which were also provided by Ms. Tafazzoli in her response. For example, both provided copies of Ms. Tafazzoli's June 29,

case.  Ms. Tafazzoli declares that the Agency possesses material evidence to address claims in this

matter, including the following:  qualifications journals and mentor assignments; requirement for

other deaf employees to escort interpreters; assignment and signing of IDPs; availability of offices

when she requested one in 2017; Human Resources systems showing credit hours availability at

various times; investigation reports on Ms. Tafazzoli's alleged harassment of interpreters;

information on her 2017 review and a deposition of Mr. Rubenstone, her temporary supervisor,

that she believes would establish that she was successfully performing the functions of her position

in 2017; accommodations provided to similarly situated employees; communications between Mr.

Layton, Mr. Lombard, Ms. Silva, and human resources employees concerning her termination,

proposed suspension, and other actions that will demonstrate discriminatory and retaliatory

animus; information about comparators; information related to the removal of the telework/split

schedule; and depositions of witnesses who witnessed the disparate treatment.  *Id.*

The Agency argues that none of the additional evidence Ms. Tafazzoli seeks would create

a genuine dispute of material fact sufficient to defeat summary judgment.  Reply 22-23 (citing

*Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006)).   In *Amirmokri*, Judge Williams

of this Court rejected the request for further discovery given the thorough investigation at the

administrative level that provided sufficient information to allow the plaintiff to respond to the

summary judgment motion.  437 F. Supp. 2d at 420-21.  More recently, Judge Blake of this Court

---

2017 affidavit in NRC-16-26 (Mot. Ex. 3, Pl.'s Resp. Ex. 7), Ms. Silva's May 9, 2017 affidavit in
NRC-16-26 (Mot. Ex. 4, Pl.'s Resp. Ex. 8), December 5 Notice of Suspension (Mot. Ex. 24, Pl.'s
Resp. Ex. 18), June 29, 2016 reprimand letter (Mot. Ex. 29, Pl.'s Resp. Exs. 16, 18), and others.
Most, if not all, Defendants' exhibits were documents that Ms. Tafazzoli would also have had or
had access to (it is not obvious whether Ms. Tafazzoli would have had access to Defendants'
Exhibit 48, containing copies of statements/correspondence regarding the September 21, 2017
incident between Ms. Tafazzoli and Mr. Lamb).

also rejected a plaintiff's request for further discovery in a case with a voluminous administrative record. *Dabas v. Brennan*, 2018 WL 1300965, at *4 (D. Md. 2018). However, I note that the plaintiff in *Dabas* had not filed a Rule 56(d) affidavit and had only argued for more discovery in the opposition to the motion. *Id.* A formal request is "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Greater Balt. Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

Although there appears to be a large administrative record, the record itself is not currently before the Court. Ms. Tafazzoli does not dispute the authenticity of the exhibits provided by the Defendants, and she has provided a large number of exhibits as well, including a "Summary Judgment Affidavit," ECF No. 28-20. Additionally, as mentioned, without converting the motion to a summary judgment motion, I may "consider documents that are explicitly incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Sposato*, 2013 WL 1308582, at *2 ("The court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed."); *CACI Int'l*, 566 F.3d at 154; Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

I have determined that the most appropriate approach is to address portions of the Defendants' motion as one to dismiss, and other portions pursuant to summary judgment, as this will facilitate resolution of the case. I shall indicate under which standard I am analyzing that portion of the motion. Further, where I have considered an exhibit that was attached to the motion or response in my analysis under the dismissal standard, I specifically note it.

## III.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256. A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.*

**DISCUSSION**

The Agency argues that Ms. Tafazzoli's disparate treatment claims under Title VII and the Rehabilitation Act—Counts I, VI, and VIII—are not cognizable, and her allegations cannot satisfy a *prima facie* case of disparate treatment; her hostile work environment claims—Counts II, IV, IX, and X—fail to include objectively severe or pervasive acts; her failure to accommodate claim— Count V—fails to establish a *prima facie* case of discrimination; and her retaliation claims— Counts III and VII—do not include allegations of materially adverse actions or a causal connection to protected activity. The Agency adds that even if Ms. Tafazzoli could establish a *prima facie* case of disparate treatment or retaliation, the challenged actions were undertaken for legitimate, non-discriminatory reasons that are not pretextual.  I shall address the Agency's arguments in turn.

**I.      Constructive Discharge Exhaustion**

As an initial matter, the Agency argues that Ms. Tafazzoli's constructive discharge claim was not timely appealed to the MSPB, which means that she has failed to exhaust her administrative remedies with respect to the claim.  Mot. Mem. 29. Ms. Tafazzoli argues that she properly exhausted her claim under the "so-called 'mixed-case' processing procedures."  Pl.'s Resp. 47.   She also asserts that her appeal was erroneously deemed untimely by MSPB based on constructive delivery of the final agency decision on August 14, 2018, and she filed her appeal within 30 days of her actual receipt of the final MSPB decision on August 25, 2018 after returning home from a trip.  *Id.* at 51 (citing 5 CFR § 1201.22(b)).  Ms. Tafazzoli's Rule 56(d) affidavit identified the discovery material she needed to fully respond to a summary judgment motion, and she did not include any needed discovery with regard to exhaustion of her constructive discharge claim.  *See* Pl.'s Resp. Ex. 12.  She also filed a "Summary Judgment Affidavit," which includes attestations of her position regarding the timeliness of her appeal to the MSPB, and three additional

affidavits specifically related to the receipt of the Final Agency Decision (her own, Chris Cooper's, and Reza Tafazzoli's). Pl.'s Resp. Ex. 11; Exs. 3, 4, 5, ECF Nos. 27-3, 27-4, 27-5. Therefore, Defendant's exhaustion argument is properly construed under the summary judgment standard.

Before a plaintiff may file an employment discrimination suit in federal court, she must administratively exhaust her claims. *See* 42 U.S.C. § 2000e-5(f); § 2000e-16(c). Failure to meet regulatory deadlines during administrative review means that a plaintiff's complaint may be dismissed for lack of administrative exhaustion. *See Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) ("[I]f an employee fails to meet any . . . statutory or regulatory deadlines, the employee's federal court action may be dismissed for failure to administratively exhaust the claim."). "Unfortunately, as the Supreme Court has understated, 'the intersection of federal civil rights statutes and civil service law has produced a complicated, at times confusing, process for resolving claims of discrimination in the federal workplace.'" *Id.* (quoting *Kloeckner v. Solis*, 568 U.S. 41, 49 (2012)). Mixed case complaints follow different procedures than non-mixed case complaints.

Because Ms. Tafazzoli elected to treat her constructive discharge claim as a mixed case complaint, the Agency was required to conduct an investigation and issue a final decision within 120 days, after which, if no action was taken, she could have chosen to appeal to the MSBP or bring the complaint to the district court. 29 C.F.R. § 1614.302(a)(1), (d)(1)(i). The Agency issued a Final Agency Decision on her constructive discharge claim on August 10, 2018, finding that Ms. Tafazzoli had not been constructively discharged. Pl.'s Resp. Ex. 2 at 44-65. When the Agency issued the final decision on her mixed case complaint, Ms. Tafazzoli then had the right to appeal to the MSPB "within 30 days of receipt of the agency's final decision." 29 C.F.R. § 1614.302 (d)(1)(ii). She also had the option at that time to file a civil action in a federal district court rather than appealing to the MSPB. *Id.* at § 1614.302 (d)(3); *see also* 5 U.S.C. § 7702(a)(2)(B). Ms.

2

Tafazzoli chose to appeal to the MSPB, but she did not file her appeal until September 24, 2018, which the MSPB found untimely.  Defs.' Mot. Ex. 54 at 6; Pl.'s Resp. Ex. 6.  The MSPB's initial decision on appeal became final on January 4, 2019.  *See* Defs.' Mot. Ex. 54 at 8.

Upon the MSPB's final decision, Ms. Tafazzoli again had options—she could have sought review by filing a request within 30 days to the EEOC, or file a *de novo* civil action in the United States District Court, or abandon her claims of discrimination and appeal to the Federal Circuit. 5 C.F.R. § 1201.157.  Ms. Tafazzoli chose to file a civil action in this Court, which was her right even though the MSPB's decision was not on the merits. *See Kloeckner*, 568 U.S. at 50, 56 (holding that judicial review can be sought at the district court "[r]egardless whether the MSPB dismissed her claim on the merits or instead threw it out as untimely").  I note that this was also spelled out for Ms. Tafazzoli in the MSPB's decision: "you may obtain judicial review of this decision— including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (not the U.S. Court of Appeals for the Federal Circuit), within 30 calendar days after this decision becomes final . . . ."  Defs.' Mot. Ex. 54 at 14 (citing 5 U.S.C. § 7703(b)(2); *Perry v. Merit Systems Protection Board*, 582 U.S. —, 137 S. Ct. 1975 (2017)).  Ms. Tafazzoli timely filed this lawsuit on February 3, 2019.

However, at issue is whether Ms. Tafazzoli timely appealed the final agency decision on constructive discharge to the MSPB.  "[I]t is well-established that, where the petitioner fails to show cause for the delay, the MSPB has the authority to dismiss an appeal from an adverse employment action that is not filed within the time period."  *Winey v. Mattis*, 1:17-cv-325 (LMB/JFA), 2017 WL 6403114, at *3 (E.D. Va. Aug. 4, 2017) (citing *Mendoza v. Merit Sys. Prot. Bd.*, 966 F.2d 650, 652 (Fed. Cir. 1992) (*en banc*); 5 C.F.R. § 1201.22(c)).  The timeliness of Ms.

Tafazzoli's appeal to the MSPB turns on the question of when she received the Final Agency Action.  The date of Ms. Tafazzoli's "receipt" is determined as follows:

> An appellant is responsible for keeping the agency informed of his or her current home address for purposes of receiving the agency's decision, and correspondence which is properly addressed and sent to the appellant's address via postal or commercial delivery is presumed to have been duly delivered to the addressee. While such a presumption may be overcome under the circumstances of a particular case, an appellant may not avoid service of a properly addressed and mailed decision by intentional or negligent conduct which frustrates actual service.

5 C.F.R. § 1201.22(b)(3); *see also* 5 C.F.R. § 1201.154.  The same subsection provides, as an example of the rule's application that "[a]n appellant who fails to pick up mail delivered to his or her post office box may be deemed to have received the agency decision." *Id.*  The regulations treat the delivery of properly addressed mail as the constructive date of receipt.  *Sweetland v. McHugh*, Case No. 4:16–cv–04049–SLD–JEH, 2017 WL 758288, at *6 (C.D. Ill. Feb. 27, 2017).

The Agency states that it sent the Final Agency Decision to Ms. Tafazzoli's address of record in Chatsworth, California by certified mail, return receipt requested. Defs.' Mot. Ex. 54 at 2; Pl.'s Resp. Ex. 6.  The delivery confirmation shows that the delivery on August 13, 2018 was forwarded, and the tracking record shows that it was ultimately delivered to "Mail Room" in San Diego, California on August 17, 2018. *Id.* at 2-3.  The Agency also sent a second copy by Federal Express to the San Diego address as requested by Ms. Tafazzoli by email on August 10, 2018. *Id.* at 3.  According to the Federal Express tracking record, the package was delivered to Ms. Tafazzoli's San Diego address on August 14, 2018. *Id.*  Thus, presumptively, Ms. Tafazzoli's appeal was timely if filed by September 13, 2018, 30 days later.  However, she did not file her appeal with MSPB until September 24, 2018. *Id.* at 1.  After identifying the timeliness issue, and providing Ms. Tafazzoli the opportunity to provide evidence to establish the timeliness of her

appeal, the MSPB found that she had constructively received the decision on August 14, 2018, making her filing 7 days late, and did not show good reason for the delay.  *Id.* at 6.

Dismissal for untimeliness may be avoided upon showing "good reason" or "good cause" for the delay.  5 C.F.R. §§ 1201.12, 1201.22(c).  "But the appellant bears the burden of establishing good cause to excuse an untimely filing, and 'whether the regulatory time limit for an appeal should be waived based upon [such] a showing . . . is a matter committed to the Board's discretion.'"  *Hopson v. Merit Sys. Prot. Bd.*, 513 F. App'x 978, 979 (Fed. Cir. 2013) (quoting *Mendoza v. Merit Sys. Prot. Bd.*, 966 F.2d 650, 653 (Fed. Cir. 1992) (*en banc*) and 5 C.F.R. § 1201.56(a)(2)(ii) (May 27, 2005)[17]).  In her affidavit attached to her response, Ms. Tafazzoli declares that she received both the mail and Federal Express deliveries when she returned from her vacation on August 25, 2018.  Pl.'s Resp. Ex. 11, ECF No. 28-20.  In her response, she states that she flew to Hawaii with her fiancé on August 15, 2018, returned to Los Angeles on August 22, 2018, drove directly to her parent' house until August 25, 2018, and then returned to San Diego and received the decision.  Pl.'s Resp. 50-51.

Based on the standard for constructive receipt in 5 C.F.R. § 1201.22(b)(3), Ms. Tafazzoli is presumed to have received the Final Agency Decision on August 14, 2018.  Ms. Tafazzoli does not address this date in her affidavits.  *See* Pl.'s Resp. Exs. 3-5.  Her affidavit, her fiancé's affidavit, and her father's affidavit focus on the dates of August 15 to August 25, 2018.  *Id.*  Ms. Tafazzoli also attached her flight itinerary showing that she left San Diego on August 15, 2018 at 1:30 p.m. Pl.'s Resp. Ex. 3.  As noted by the Administrative Law Judge in the Initial Decision, Ms. Tafazzoli fails to raise any explanation to overcome the presumption of receipt on August 14, 2018, and her

---

[17]     Now § 1201.56(b)(2)(i)(B), effective March 30, 2015 ("The appellant has the burden of proof, by a preponderance of the evidence . . . with respect to: The timeliness of the appeal.").

silence in that regard fails to excuse the belated appeal.  *See* Defs.' Mot. Ex. 54, Pl.'s Resp. Ex. 2. Ms. Tafazzoli has not demonstrated good cause for her late filing, and it was properly dismissed as untimely.

Accordingly, Ms. Tafazzoli's constructive discharge claim is dismissed without prejudice for failure to exhaust administrative remedies.  I note that there is no dispute that Ms. Tafazzoli's other claims are properly exhausted.

## II.     Disparate Treatment Claims (Counts I, VI, VIII)

Ms. Tafazzoli alleges that she was discriminated against by disparate treatment on the bases of her gender (Count I) and color (Count VIII) under Title VII, 42 U.S.C. § 2000(e), *et seq.*, and disability (Count VI) under the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*  Am. Compl. ¶¶ 149-159; 212-226; 241-252.  The Agency asserts that she has not alleged sufficient facts to establish a *prima facie* case of disparate treatment based on gender, color, and disability bias.  Mot. Mem. 31-32.

The Agency argues that because there is no direct evidence of discrimination, it is necessary to evaluate Ms. Tafazzoli's allegations in light of the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). However, the Supreme Court has also explained that the "*prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement," and that it had "never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema*, 534 U.S. 506, 510-11 (2002).  The Fourth Circuit has clarified that while a plaintiff "need not plead facts sufficient to establish a *prima facie* case of race-based

discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017).

Ms. Tafazzoli's Rule 56 Affidavit sets forth discovery that she believes is necessary to properly address her disparate treatment claims, including: (1) evidence that similarly-situated non-deaf employees were assigned qualification journals and/or mentors within a year of employment, and Ms. Silva assigned non-deaf employees tasks enabling them to complete qualifications; (2) other deaf employees were not required to escort interpreters; (3) Ms. Silva's assignment and signing of IDPs to prove that no other employee within her division had an IDP with the "subject to available funds" language; (4) Ms. Silva had never conditionally approved and then removed credit hours for similarly-situated non-deaf employees; (5) Ms. Silva required a lower level of specificity for other employees when applying the credit hour policy; and (6) documents to show that a 2017 review was being processed and would demonstrate that she was successfully performing the functions of her position.  Pl.'s Resp. Ex. 12.  She also seeks communications that she believes will demonstrate discriminatory animus towards her and depositions of those who witnessed the disparate treatment.  *Id.*  Mindful that a court "should hesitate" before denying a request for discovery "when the nonmovant seeks necessary information possessed only by the movant," *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014), and the highly fact-intensive nature of a disparate treatment inquiry, I shall analyze Ms. Tafazzoli's disparate treatment claims under the dismissal standard, which requires her to plead a plausible claim that rises above a speculative level. Where I have considered an exhibit in my analysis, I specifically note it.

Title VII prohibits discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); *Univ. of Texas Sw. Med.*

*Ctr. v. Nassar*, 570 U.S. 338, 348 (2013).  To assert a disparate treatment claim, Ms. Tafazzoli must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

The Agency does not dispute that Ms. Tafazzoli has sufficiently alleged being a member of a protected class, based on her allegations of being a non-white female.  The Agency, however, does dispute that her job performance was satisfactory, that she suffered an adverse employment action, and asserts that she alleges no specific facts related to different treatment because of gender or color of any similarly situated employees.  Mot. Mem. 32-36.

### A.  Satisfactory Job Performance

The Agency argues that Ms. Tafazzoli fails to establish that she was performing her job satisfactorily.  Mot. Mem. 32-33.  She has alleged satisfactory job performance, but only in a conclusory fashion.  Am. Compl. ¶¶ 49, 152, 244.  She has also alleged facts that could indicate that her job performance was less than satisfactory, such as receiving negative performance evaluations, Am. Compl. ¶ 81, and being suspended, *id.* at ¶ 106.  She adds, however, that the negative performance evaluations were false, that she exceeded the expectations of her position, and prior to 2016, she had six prior appraisals with a rating of "excellent."  *Id.* at ¶ 81. In her response to the dismissal motion, Ms. Tafazzoli refers to exhibits that she attached, which includes her response to the proposed suspension, as well as her summary judgment affidavit.  Pl.'s Resp. 36-37.  She adds that it is an issue for discovery.  *Id.* at 37.  Since I am reviewing this claim under the dismissal standard, I have not considered these exhibits, and I accept that her allegations are sufficient to satisfy this element.

2

### B.      Adverse Employment Action

For purposes of a Title VII discrimination claim, "the plaintiff must show that her employer took an action that adversely 'affect[ed] *employment* or alter[ed] the conditions of the *workplace*.'" *Laird v. Fairfax County, Va.*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (emphasis added)). "The adverse action must result in 'some *significant detrimental effect*,' requiring more than a position that is 'less appealing' to the plaintiff." *Id.* (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (emphasis added)). Examples of typical adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibilities, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). An action that merely causes an employee irritation, inconvenience or dissatisfaction does not rise to an actionable adverse action. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004); *Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002).

For all of her discrimination claims, Ms. Tafazzoli alleges the following adverse actions:

> Plaintiff received a proposed 14 day suspension; a 14 day suspension; reprimanding Plaintiff, making a material change to Plaintiff's duties; eliminating benefits of Plaintiff's employment; threatening Plaintiff's employment; threatening Plaintiff with disciplinary action; removing and/or hindering Plaintiff's reasonable accommodations; physical battery and assault; banning Plaintiff from the physical premises; suspending Plaintiff from all her duties and revoking Plaintiff's network access; denying Plaintiff's requests to report sexual harassment and stalking to appropriate personnel; and refused to provide Plaintiff with a Fiscal Year 2017 rating.

Am. Compl. at ¶ 153; *see also* ¶¶ 222, 245.[18]

---

[18]     Ms. Tafazzoli also included a constructive discharge action, but as discussed above, the constructive discharge claim has been dismissed.

Ms. Tafazzoli fails to plausibly allege an adverse employment action giving rise to an inference of discrimination.  She has not pleaded any demotion or decrease in pay or benefits.  She alleged that she was assigned menial duties, lost accommodations such as a split work schedule and teleworking, was scolded, was denied leave and training opportunities, and was threatened with disciplinary action.  Am. Compl. ¶¶ 74-76, 88-89, 95, 96-100, 104-106.  Courts in this circuit have held that an employer's refusal to allow a flex schedule or telework arrangement, without more, does not rise to the level of an adverse employment action.  *See Terry v. Perdue*, No. JKB-18-31, 2018 WL 4494883, at *5 (D. Md. Sept. 19, 2018) (collecting cases). Nor does suspension of a telework arrangement.  *Dailey v. Lew*, No. GLR-15-2527, 2016 WL 1558150, at *5–6 (D. Md. Apr. 18, 2016) *aff'd*, 670 F. App'x 142 (4th Cir. 2016). District courts have held that restricting leave or issuing admonishment letters is not a materially adverse employment action. *See id.* at 5, 7-8 (collecting cases). Being subjected to micro-management and excessive criticism, in itself, is not actionable.  *See Lee v. Mattiss*, No. PX-17-2836, 2018 WL 3439261, at *9 (D. Md. July 17, 2018).  Ms. Tafazzoli has not alleged how these actions, either alone or collectively, had a significant detrimental effect on her employment.

Additionally, her 14-day suspension was described as a disciplinary action that Ms. Tafazzoli deemed unfair.  It did not, however affect her employment position, her pay or benefits, or loss of job title, and there is no indication that it was designed to, or would lead to, further discipline.  *See, e.g.*, *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 429, 431 (4th Cir. 2015) (determining that a disciplinary action was not an adverse action in the context of a retaliatory claim under Title VII); *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) ("[T]erms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from a state agency's

disciplinary procedures.") *abrogated by Burlington*, 548 U.S. 53 (holding that *Von Gunten's* "adverse employment action" standard applied only to substantive discrimination claims and not to claims of retaliation); *Lacasee v. Didlake, Inc.*, 194 F. Supp. 3d 494, 504 (E.D. Va. 2016), *aff'd*, No. 16-1896, 2018 WL 345064 (4th Cir. Jan 10, 2018) (collecting cases and noting that neither placing an employee on administrative leave with pay for a short time to allow investigation nor written or verbal reprimands that do not lead to further discipline constitute adverse employment actions). Ms. Tafazzoli alleges no factual allegations to support her inclusion of "physical battery and assault" in the list of adverse actions, other than to state that she "did not assault or otherwise shove the security officer." Am. Compl. ¶¶ 138-39.

Ms. Tafazzoli's response is focused on her retaliation claim, under which an adverse action need only be one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (citing *Burlington*, 548 U.S. at 67). She does not argue that her alleged actions qualify as adverse employment actions in the context of a disparate treatment claim.

Ms. Tafazzoli has failed to allege an adverse employment action for Title VII purposes, although the alleged actions will be considered in the assessment of her other claims. Further, even if I accept that Ms. Tafazzoli has adequately pleaded an adverse employment action, her claims under Counts I and VIII fail as discussed below because she cannot show disparate treatment of similarly situated coworkers.

### C. Different Treatment than Coworkers

The Fourth Circuit "has emphasized that a comparison between similar employees 'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d

219, 223 (4th Cir. 2019) (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)). But, to establish a valid comparator, a plaintiff must plead facts to show "that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* at 223-24 (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).

Here, Ms. Tafazzoli presents only vague and conclusory allegations of different treatment from similarly situated coworkers, and she provides no meaningful allegations to substantiate her claims that she was treated differently because of her *gender* or her *color*.  *See* Am. Compl. ¶¶ 62-63, 77, 96-98, 146, 154-55, 247-48.   In fact, she refers only to "non-deaf engineers" as her comparators.  *Id.* at ¶¶ 70, 73.  She states that "coworkers received duties that were commensurate with their position and were not deaf." *id.* at ¶ 80, she was assigned menial duties "because of her disability," *id.* at ¶¶ 74-75, and was treated differently than hearing-enabled employees, *id.* at ¶¶ 99-100.  Ms. Tafazzoli has not identified a single similarly situated coworker who was male that was treated differently as a result, nor a single similarly situated coworker who was white that was treated differently.

Without any supporting factual allegations of similarly situated comparators, she cannot "nudg[e] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In her response, Ms. Tafazzoli argues that she needs discovery because her employer has all the evidence to support her claim.  Pl.'s Resp. 24-25, 39.  However, especially in light of the long history and record developed in the administrative case, and the multiple amendments in this

case,[19] including the most recent amendment made in response to Defendants' pre-motion letter identifying the deficiencies they perceived in her complaint, there is no excuse for Ms. Tafazzoli to not provide a single factual allegation of a similarly situated individual who was treated differently because of gender or color. As such, another opportunity to amend would be futile. Therefore, I shall dismiss Counts I and VIII with prejudice.

### D. Disparate Treatment Due to Disability

Claims of discrimination under the Rehabilitation Act are considered analogous to those under Title VII. *Scott v. Sebelius*, No. RWT-11-2865, 2013 WL 709765, *3 n. 2 (D. Md. Feb. 25, 2013) (citing *Bosse v. Balt. Cty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010)); *see also Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). To state a claim for discrimination under the Rehabilitation Act, a plaintiff must allege: (1) she has a disability; (2) she is otherwise qualified for her employment; and (3) she suffered an adverse employment action solely by reason of her disability. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). The Rehabilitation Act proscribes discrimination against an "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a).

There is no dispute that Ms. Tafazzoli has a qualifying disability as a result of being deaf. The Agency argues that she fails to allege an adverse action undertaken solely because of her disability. Mot. Mem. 36. As discussed above, the actions pleaded do not constitute actionable adverse employment actions, but even if I accept them as such, Ms. Tafazzoli has not identified a single employee outside of her protected class who was treated more favorably. Her complaints of non-deaf employees being treated differently were alleged in a conclusory fashion and are

---

[19]     A plaintiff's complaint ordinarily should be dismissed without prejudice unless she previously has been given an opportunity to amend her complaint or if doing so would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

unsupported by any factual allegation showing that any identified non-deaf employees were subject to the same standards, engaged in the same conduct without mitigating circumstances that would distinguish their conduct, or the supervisor's treatment differed because they were not hearing-impaired. There is simply not enough alleged to permit me to infer more than the mere possibility of disparate treatment solely because Ms. Tafazzoli was deaf. Therefore, for the same reasoning as above, Count VI also shall be dismissed with prejudice.

### III.    Hostile Work Environment Claims (Counts II, IV, IX, X)

Ms. Tafazzoli alleges that she was subjected to a hostile work environment on the basis of her gender (Count II) and color (Count IX) in violation of Title VII, because of her disability in violation of the Rehabilitation Act (Count X), and in retaliation for prior EEO activity (Count IV). Am. Compl. ¶¶ 160-63, 175-83, 253-54, 238-44, 245-53.[20] The Agency argues that Ms. Tafazzoli's claims cannot survive because the actions of which she complains do not constitute actionable claims of harassment and are not sufficiently severe or pervasive to alter the terms and conditions of her employment. Mot. Mem. at 43-44. The Agency also argues that she cannot show that a reasonable person would perceive the workplace to be objectively hostile nor that the actions were "because of" her gender, color, disability, or past EEO activity. *Id.* at 45-47.

Ms. Tafazzoli responds to the Agency's arguments as if it were a motion for summary judgment, indicating that she satisfies the essential elements of a *prima facie* case under Title VII or the Rehabilitation Act and that the Agency's offered reasons for its actions were a pretext for discrimination. Pl.'s Resp. 26-28, 35-40. She also argues that discovery is required, and her Rule 56 Affidavit lists specific discovery she would seek if she has the opportunity. *Id.* at 37-38; Pl.'s

---

[20]    I note that many paragraphs are misnumbered and duplicated; I have simply reported them as stated.

Resp. Ex. 12.   I shall review these claims in light of the *McDonnell Douglas* burden-shifting framework,[21] but I remain aware that additional discovery may be required for Ms. Tafazzoli to properly respond to factual disputes, and I consider whether Ms. Tafazzoli has adequately pleaded her claims rather than if she has sufficient evidence to support her claims.

A claim for hostile work environment based on a protected characteristic exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

To establish a *prima facie* claim, the plaintiff must show that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 (4th Cir. 2016) (citations omitted).   Just as with the claim of disparate treatment, Ms. Tafazzoli's hostile work environment claim requires a showing that the alleged conduct was because of her gender, color, disability, or protected activity.   Ms. Tafazzoli can satisfy this burden by showing that, "but for" her protected class, she would not have suffered discrimination. *Smith*

---

[21]      Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case. 411 U.S. at 802.   Once a *prima facie* case is established, the burden of production shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The defendant's burden at this point is "one of production, not persuasion." *Id.* Plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the employer are but a pretext for discrimination, thus creating an inference that the employer did act with discriminatory intent. *Id.* at 143. If the plaintiff cannot produce evidence demonstrating the falsity of the employer's proffered reasons, then defendants are entitled to summary judgment as a matter of law. *Id.* at 148.

*v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (citing *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 142 (4th Cir. 1996)).  "It is axiomatic that a plaintiff's mere speculation as to racial or gender animus will not suffice to prove that she suffered unwelcome conduct due to" membership in a protected class. *Alexander v. U.S. Dep't of Veterans Affairs*, No. DKC–10–3168, 2012 WL 78874, at *5 (D. Md. Jan. 10, 2012).

Ms. Tafazzoli's allegations do not suffice.  As discussed above, she provides no meaningful allegations that would lead me to infer that any of the actions taken were because of her gender, her color, or her disability.  Ms. Tafazzoli asserts that she has alleged that she was reprimanded in retaliation for her protected activity.  Pl.'s Resp. 30 (citing Am. Compl. ¶¶ 99, 103, 104, 172, 22,[22] 234 and an attached exhibit containing reprimands, Ex. 18, ECF No. 27-16).  First, Ms. Tafazzoli alleges that she was approached while on a training course and handed a note that demanded she leave the course and threatening negative consequences, which no other hearing-abled employee had suffered.  Am. Compl. ¶ 99.  Ms. Tafazzoli's exhibit reveals that she was directed to leave to provide information regarding a workplace injury that she had reported.  Pl.'s Resp. Ex. 18 at 1.  There is nothing in the referenced exhibit that would lead me to infer that the directive was related to Ms. Tafazzoli's hearing impairment, gender, color, or prior EEO activity.  Next, Ms. Tafazzoli's allegations in paragraphs 103 and 104 are vague, conclusory allegations of disciplinary threats with no underlying factual allegations for support.  Am. Compl. ¶¶ 103, 104.  Further, paragraphs 172 and 234 contain allegations of adverse actions and a conclusory statement that there is a causal connection between her protected activity and the adverse actions.  *Id.* at ¶¶ 172, 234.  Such a declaratory statement without more to show a causal connection is not enough.

---

[22]     Paragraph 22 is simply a statement of this Court's subject matter jurisdiction, but it is not obvious what paragraph she may have intended to cite.  Am. Compl. ¶ 22.

Ms. Tafazzoli also argues that the actions of which she complains would be perceived by a reasonable person as severe and pervasive.  Pl.'s Resp. 57-58 (citing *Rock v. McHugh*, 819 F. Supp. 2d 456, 471 (D. Md. 2011)).  "To determine whether a reasonable person would perceive workplace conduct to be severe and pervasive, the court considers a number of factors, such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.'" *Rock*, 819 F. Supp. 2d at 471 (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001)).  The *Rock* court also observes that the "standard for proving an abusive work environment is intended to be a very high one because the standard is designed to filter out complaints attacking 'the ordinary tribulations of the workplace.'" *Id.* (quoting *Wang v. Metro. Life Ins. Co.*, 334 F. Supp. 2d 853, 864 (D. Md. 2004)).  Ms. Tafazzoli alleges that she was reprimanded twice, given less than an excellent evaluation, denied accommodations, and was suspended. Pl.'s Resp. 57.  She also asserts that her supervisor made a sexually offensive gesture, and that she was intimidated by security personnel investigating a "gag camera that a coworker had affixed to her cube," although there are no allegations that her supervisor made a sexually offensive gesture in either her Complaint or in her EEO claims.  *Id.*; *see* Am. Compl., Defs.' Mot. Exs. 1, 2, 35, 36.[23]   These allegations are generally of discrete personnel decisions.  Taken collectively, they fail to clear the high bar that would establish an environment that is objectively severe or pervasive sufficient to support a hostile work environment claim.  And Ms. Tafazzoli's requested discovery would not resolve this deficiency.

Additionally, the complained-of personnel actions—reprimands, suspension, security investigation—were supported by the Agency's legitimate non-discriminatory reasons, such as

---

[23]     These exhibits are integral to the Complaint and their authenticity is not disputed.

Ms. Tafazzoli's failure to provide requested documents, failure to follow proper procedures for earning credit hours, lack of candor, and complaints of Ms. Tafazzoli's harassing behavior towards interpreters and security personnel. *See* Mot. Mem. 36-40.

In sum, Ms. Tafazzoli fails to allege a plausible hostile work environment claim. She has had multiple opportunities to amend, including in response to Defendants' pre-motion letter, which outlined the perceived deficiencies in her complaint. Additionally, as mentioned above, the requested discovery would not resolve the deficiencies in her pleading. Therefore, dismissal of Counts II, IV, IX, and X for failure to state a plausible claim is with prejudice.

## IV.    Failure to Accommodate (Count V)

Ms. Tafazzoli alleges that the Agency failed to provide reasonable accommodations, which violates the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*  Am. Compl. ¶¶ 184-211. The Agency seeks summary judgment on this claim, arguing that Ms. Tafazzoli has failed to raise a genuine issue of material fact on the issue of whether the NRC failed to reasonably accommodate her disability. Mot. Mem. 47-52. Ms. Tafazzoli asserts that discovery will show that reasonable accommodations were removed or denied to her although granted to other similarly situated deaf employees. Pl.'s Resp. Ex. 12.

"To establish a *prima facie* claim of failure to accommodate under the Rehabilitation Act, a plaintiff must demonstrate that (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019) (citing *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 414 (4th Cir. 2015)). The dispute is focused primarily on the fourth element. As part of the reasonable accommodation procedure, the Agency is required to

engage the employee in an "interactive process." *Brady v. Bd. of Educ. of Prince George's Cty.*, 222 F. Supp. 3d 459 (D. Md. 2016).  Certainly, employers are not required to provide "the exact accommodation that the employee requested," and may instead provide "an alternative reasonable accommodation" at their discretion. *Reyazuddin*, 789 F.3d at 415. "Whether an accommodation is reasonable is a generally a question of fact for the jury." *Id.* at 416 (citing *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994)).

Ms. Tafazzoli argues that although the Agency provided some accommodations, they were not effective.  Pl.'s Resp. 54.  As examples, she asserts that her video phone did not work, and her access to Communication Access Realtime Translation (CART) was restricted.  Pl.'s Resp. Exs. 11, 55.  Ms. Tafazzoli requested that the Agency implement IP-Relay services, which it did not do.  Pl.'s Resp. Exs. 52, 58.  Also, some prior-approved accommodations were removed, and the Agency refused to reinstate them, such as the split work-telework schedule and interpreters.  Pl.'s Resp. Exs. 11, 58, ECF No. 28-17.  She also argues that she was not provided with an enclosed office that she needed to utilize certain services (although discovery would show that there were a number of available offices).  Pl.'s Resp. Ex. 11. The Agency asserts that it engaged in the interactive process and provided Ms. Tafazzoli many of her requested accommodations.  Mot. Mem. 49 (citing Defs.' Mot. Exs. 10, 17, 44, ECF Nos. 26-12, 26-14, 26-46)).

Both the employee and employer bear a burden of engaging in the interactive process in good faith.  The Fourth Circuit has noted:

> [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts

> should attempt to isolate the cause of the breakdown and then assign
> responsibility.

*Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) (quoting

*Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996)).

Ms. Tafazzoli argues that discovery on these issues matters: "If, on the one hand, the

Agency was providing similar accommodations to other similarly situated deaf employees, then

the Agency unreasonably denied them to Ms. Tafazzoli. If, on the other hand, the Agency was not

providing them, then there is a material issue of fact as to whether the limited accommodations

that Ms. Tafazzoli was provided were 'effective.'"  Pl.'s Resp. 56 (citing Pl.'s Resp. Ex. 12).   I

agree; the evidence presented creates a genuine issue of material fact as to whether the

accommodations provided were reasonable, whether the interactive process was pursued by both

parties in good faith, and whether accommodations were removed or denied appropriately.

Accordingly, summary judgment is denied on Count V, and Ms. Tafazzoli shall be allowed

to proceed with discovery on this claim.

## V.      Retaliation (Counts III, VII)

Ms. Tafazzoli alleges retaliation in violation of Title VII (Count III) and the Rehabilitation

Act (Count VII).  The Agency argues that these claims fail for the same reasons as the claims of

disparate treatment and hostile work environment fail, even considering the lower bar for

determining an adverse action in the retaliatory context.  Mot. Mem. 53.

Retaliation claims under the Rehabilitation Act are assessed under the same framework as

Title VII retaliation claims.  *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 491 (D.

Md. 2013).  To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) she

engaged in a protected activity; (2) the [employer] took an adverse employment action against her;

and (3) a causal connection existed between the protected activity and the adverse action." *Id.*

2

(quoting *Works v. Colvin*, 519 F. App'x 176, 186 (4th Cir. 2013)); *see also Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018) (clarifying that the third element is an "adverse action" rather than an "adverse employment action.").  The standard for establishing an adverse employment action "is more lenient for retaliation claims than for substantive discrimination claims" because the adverse employment action in a retaliation case does not need to affect an employee's "terms of conditions of employment." *Kelly v. Berryhill*, Civil Action No. RDB-18-0049, 2019 WL 1300816, at *5 (D. Md. Mar. 20, 2019) (quoting *Burlington*, 548 U.S. at 64). Rather, the "plaintiff need only show that the challenged action 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington*, 543 U.S. at 68).

There is no dispute that Ms. Tafazzoli engaged in protected activity, and the Agency appears to accept that there may be some alleged adverse actions that could be considered materially adverse under Title VII or the Rehabilitation Act.  Mot. Mem. 53-54.  But the Agency argues that Ms. Tafazzoli does not plausibly allege a causal connection between her protected activity and the adverse actions.  *Id.* at 54. For example, the June 2016 letter of reprimand is too remote in time to have been causally connected to Ms. Tafazzoli's 2011 and 2014 EEO complaints. *Id.* (citing *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998)).  And it predated the December 2016 EEO complaint.  *Id.*  (citing *Gen. Eng'g & Tech. Support Serv. v. Balt. Gas & Elec.*, No. 18-cv-00124-PX, 2019 WL 4016846, at *6 (D. Md. Aug. 26, 2019)).  As another example, the July 2017 decision to suspend occurred over six months after the December 2016 complaint, which is also too remote to support a causal connection. *Id.* (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  In addition to other examples similarly demonstrating a lack of a causal

connection, the Agency adds that the challenged actions were all undertaken for legitimate, non-discriminatory reasons that are not pretextual. *Id.* at 55.

Ms. Tafazzoli responds that she engaged in a series of ongoing complaints or requests for reasonable accommodation, close temporal proximity (as little as six weeks) has been found sufficient to support a *prima facie* case, and the sheer volume of complaints could permit a reasonable fact-finder to infer a causal connection. Pl.'s Resp. at 32-33. The Fourth Circuit has held that "establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden." *Strothers*, 895 F.3d at 335 (citations omitted). It is not necessary to show that the protected activity was a but-for cause of an adverse action until the pretext stage of the burden-shifting framework. *Id.* at 335-36. Ms. Tafazzoli alleged many negative actions taken by her supervisor that occurred within a short temporal proximity of one of her complaints. *See* Pl.'s Resp. 33-35. To respond to the Agency's "legitimate, non-discriminatory reasons that are not pretextual," Ms. Tafazzoli asserts that discovery is needed, including deposition of Agency witnesses, documentation of investigations, and communications related to her proposed suspension that would demonstrate the Agency's retaliatory animus in the decision-making process. *See* Pl.'s Resp. Ex. 12.

Accordingly, I shall deny the Agency's motion to dismiss Counts III and VII, and Ms. Tafazzoli shall be allowed to proceed with discovery on those claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion, ECF No. 26, is granted in part and denied in part. Counts I, II, IV, VI, VIII, IX, and X are dismissed with prejudice. Counts III, V, and VII shall proceed to discovery. Ms. Tafazzoli's constructive discharge claim is dismissed without prejudice for failure to exhaust administrative remedies. Defendants shall file an Answer to Counts III, V, and VII in the First Amended Consolidated Complaint, ECF No. 11, by December 18, 2020,

2

after which the Court will enter a Scheduling Order and schedule a Federal Rule of Civil Procedure 16 conference call with the parties to discuss further pretrial proceedings.

A separate order follows.

Date:   November 30, 2020

_____/S/_____
Paul W. Grimm
United States District Judge